ALTENBERND, Judge.
The Bureau of Crimes Compensation appeals an order denying its subrogation claim arising from a payment it made to Mr. Livingston under the Florida Crimes Compensation Act, sections 960.01-.28, Florida Statutes (1985). The trial court denied subrogation, reasoning that Mr. Livingston’s damages were so great that it would be unfair to require him to reimburse any amount to the state. We affirm the result in the trial court, but conclude that the Bureau had no subrogation claim against the funds that Mr. Livingston re *722 ceived from his uninsured motorists insurance coverage.
Mr. Livingston was severely injured on March 13,1986. He was walking along the side of the road when two men in a pickup truck stopped to offer him a ride. Thereafter, the two men attacked Mr. Livingston and ultimately threw him from the pickup while it was in motion. Mr. Livingston sustained head injuries. It is undisputed that the full value of his claim exceeds $2,000,000.
Mr. Livingston lived with his parents at the time of this incident. They had a policy of automobile insurance with Aetna Casualty and Surety Company that provided $200,000 in uninsured motorists coverage. Mr. Livingston made a claim under this coverage as a resident relative who was injured by an unknown or phantom vehicle. The insurance company denied the claim on the ground that the intentional criminal assault by the two men did not result from the ownership of an uninsured motor vehicle.
Mr. Livingston also filed a timely claim under the Florida Crimes Compensation Act. The Bureau of Crimes Compensation reviewed his claim and paid the maximum statutory amount, $10,000. See § 960.-13(8), Fla.Stat. (1985). In his application for these benefits on the Bureau’s standard form, Mr. Livingston agreed
to notify the Bureau of Crimes Compensation in the event that additional benefits become available to me in payment of the same expenses for which I receive compensation from the Bureau, and to transfer and assign these benfits [sic] to the extent of the amount of the award the Bureau makes to me. (Section 960.-16, Florida Statutes)
When Mr. Livingston received these benefits, no special agreement was signed to give the state any contractual right to claim subrogation against uninsured motorists benefits in the event he later prevailed against Aetna.
After Mr. Livingston received the crimes compensation benefits, he filed a lawsuit against Aetna seeking uninsured motorists coverage. The trial court entered a summary judgment in favor of Aetna. This court reversed, concluding that a question of fact remained concerning the connection of the pickup to the injuries sustained by Mr. Livingston. Livingston v. Aetna Casualty & Surety Co., 534 So.2d 1251 (Fla. 2d DCA 1988). On remand, the claim was settled prior to trial for $165,000. The Bureau now seeks reimbursement of its $10,000 from this settlement.
The outcome of this case is determined by a comparison of the statutory language in chapter 960 to that governing uninsured motorists coverage, section 627.727, Florida Statutes (1985). An award under the Florida Crimes Compensation Act is “provided subsequent to all benefits provided by primary insurance carriers, including, but not limited to health and accident insurers, workers’ compensation, and automobile accident coverage.” § 960.13(2), Fla.Stat. (1985). Section 960.16 states:
Payment of an award pursuant to this chapter shall subrogate the state, to the extent of such payment, to any right of action accruing to the claimant or to the victim or intervenor to recover losses resulting from the crime with respect to which the award is made.
Section 627.727(1) states, in part:
The coverage described under this section shall be over and above, but shall not duplicate, the benefits available to an insured under any workers’ compensation law, personal injury protection benefits, disability benefits law, or similar law; under any automobile medical expense coverage; under any motor vehicle liability insurance coverage; or from the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident.
The parties to this appeal have noted the similarities between crimes compensation and workers’ compensation. For purposes of the uninsured motorists statute, section 627.727, we conclude that an award under section 960.13 is a benefit under a “similar law.” Thus, the uninsured motorists benefits payable by the *723 insurance company are over and above and do not duplicate the benefits received from the crimes compensation fund. Since there was no duplication of benefits, Mr. Livingston did not receive “payment of the same expenses for which [he received] compensation from the Bureau,” as described in his agreement with the Bureau. Mr. Livingston had no right of action against Aetna to recover for losses with respect to which the Bureau had paid benefits. Thus, the Bureau had neither a statutory nor a contractual subrogation right against the uninsured motorists benefits.
We note that this interpretation is consistent with the treatment of workers’ compensation liens under the uninsured motorists statute. Such liens do not establish any claim against uninsured motorists benefits. Volk v. Gallopo, 585 So.2d 1163 (Fla. 4th DCA 1991). We also conclude that the statement within the crimes compensation act that crimes compensation benefits are “subsequent” to insurance benefits does not override the language of the uninsured motorists statute or create a subrogation right not contemplated by the uninsured motorists statute.
In this case, it is entirely possible that the Bureau would have paid $10,000 to Mr. Livingston even if he had already received this insurance settlement. His damages and his actual needs far exceed both payments. In other cases, however, such an insurance dispute and delayed payment of uninsured motorists benefits could result in a payment of scarce crimes compensation benefits that might be better paid to another victim of crime. We express no opinion as to whether this concern could be cured by a change in the Bureau’s contract or whether it requires legislative review, but it is a matter that warrants some additional attention.
Finally, the parties present extensive arguments concerning the nature and extent of the Bureau’s subrogation right when a victim receives only a partial payment of damages from another source. In light of our holding, we decline to review that issue at this time.
Affirmed.
SCHEB, A.C.J., and CAMPBELL, J., concur.